IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| GREGORY HANDLEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 13-991 |
| v. | * | |
| | * | |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

************

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Gregory Handley ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 16).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1957, has one year of a college education, and previously worked as a heavy equipment mechanic.  R. at 14, 25-26, 136, 143.  Plaintiff applied for DIB on September 5, 2009, alleging disability beginning on March 16, 2000 (later amended to December 31, 2006, the date last insured), due to a back injury.  R. at 9, 12, 110-13, 123.  The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 47-54, 61-65.  On October 6, 2011, ALJ C.J. Sturek held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 20-46.  On October 17, 2011, the ALJ issued a decision finding Plaintiff not disabled since the amended alleged onset date of disability of December 31, 2006.  R. at 6-19.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 31, 2013.  R. at 1-5.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 3, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    State Agency Medical Consultant

On August 4, 2010, S.K. Najar, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 472-79.  Dr. Najar opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 473.  Plaintiff occasionally could stoop and crawl and frequently could balance, kneel, crouch, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 474.  Plaintiff had no manipulative, visual, communicative, or environmental limitations, however.  R. at 475-76.

### B.    Hearing Testimony

#### 1.    Plaintiff's Testimony

In his decision, the ALJ reviewed Plaintiff's testimony:

> [Plaintiff] testified that he stopped working due [to] his impairments that resulted from a work (back) injury that occurred in 2006.  Treatment has included a muscle relaxer that eased his pain within an hour, and had no side-effects.  However, he slept only 4-5 hours nightly, as well as about one hour 3-4 times daily.

> He further testified that [he] could neither any longer go fishing after the 2006 injury, nor tie his shoes.  He has had to continuously . . . wear back support(s).

> [Plaintiff] alleges that his physical impairments restrict his ability to function on a daily basis and perform work-related activities.  He alleges an inability to stand, sit, walk, climb, carry objects, and perform other exertional activities.

> . . . .

[Plaintiff] testified that his movement up and down stairs has not been a problem. He has not had balance problems. He stated that he has been able to do some household chores, including doing light laundry. He has not had a problem with personal care, such as dressing or bathing.

He has ordinarily watched TV and done some reading in a reclining chair. He has visited with others and attended church every Sunday. He has walked for exercise.

R. at 12-13.

### 2.    VE Testimony

According to the VE, Plaintiff's past work as a heavy equipment mechanic as he performed it is skilled and heavy.[2]  R. at 27.  In response to a series of questions regarding a hypothetical individual with Plaintiff's same age, education, and work experience who had various limitations, the VE testified that sedentary jobs available to such a person included order clerk and document preparer.  R. at 42-44.  If Plaintiff's testimony were credible, however, he could not maintain any work.  R. at 43-44.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below.  *See infra* Part VI.

### III

### Summary of ALJ's Decision

On October 17, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of December 31, 2006; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R.

---

[2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. § 404.1567(d).

pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could

perform other work in the national economy, such as an order clerk or document preparer.  R. at

11-15.  The ALJ accordingly found that he was not disabled as of December 31, 2006.  R. at 16.

> In so finding, the ALJ found that, as of the date last insured, Plaintiff had the RFC

> to perform the full range of sedentary work, as defined in 20 CFR 404.1567(a),
> with exertional limitations which included the ability to lift and/or carry 5 pounds
> frequently and 10 pounds occasionally, walk/stand/sit (with normal breaks) for 6
> hours out of an 8-hour workday, with the added requirement of a sit/stand option
> at intervals of approximately ½ hour.  He also had the following non-exertional
> limitations: no work involving the use of ladders, ropes or scaffolds; no crawling,
> and only occasionally using stairs or ramps, balancing, bending, stooping,
> kneeling, crouching, or squatting.  He needed to avoid concentrated exposure to
> hazards (such as moving machinery or unprotected heights).  He also had a
> moderate mental limitation due to pain, fatigue, and the effects of medication,
> affecting the ability to keep up a pace.

R. at 12-13 (footnote omitted).[3]  The ALJ considered Plaintiff's credibility and found that his

"medically[]determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects

of these symptoms are only somewhat credible, to the extent that they are inconsistent with the

[ALJ's RFC] assessment."  R. at 13.  The ALJ also weighed the opinion evidence in the record,

giving "considerable weight" to Dr. Najar's opinion.  R. at 14.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.    42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

§§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290;  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

A.    **ALJ's RFC Assessment**

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[5] ("SSR") 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 12-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 5. Plaintiff's assertion is without merit, as discussed below.

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

Plaintiff first maintains that the ALJ "failed to set forth a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence"; thus, the ALJ's RFC assessment "is a naked conclusion, devoid of analysis." *Id.* The ALJ, however, discussed the medical evidence and Plaintiff's testimony and statements before discussing the effect of Plaintiff's impairments on his RFC. R. at 12-14. The ALJ also noted that the record did not contain opinions from treating or examining physicians indicating a greater degree of limitation than determined by the ALJ in the RFC assessment. R. at 14. Plaintiff also points to no evidence that would support a more restrictive RFC assessment. Plaintiff's contention accordingly is without merit.

Plaintiff next contends that a sit/stand option every 30 minutes is inconsistent with the ALJ's RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 12-1. "Granting a sit/stand option every thirty minutes is not inconsistent with a finding that an individual can perform only sedentary work." *Parker v. Colvin*, Civil No. JKS 11-2170, 2013 WL 4551821, at *5 (D. Md. Aug. 27, 2013); *see Daniels v. Colvin*, Civil Action No. TMD-11-00599, 2013 WL 6528913, at *2 (D. Md. Dec. 11, 2013) (While it is true that a limitation as this *might* preclude some types of sedentary work, Plaintiff is incorrect in his assertion that it automatically precludes all types of sedentary work." (footnote omitted)). Further, the ALJ elicited testimony from a VE to determine the extent to which Plaintiff's limitations, including the need for a sit/stand option, eroded the unskilled, sedentary occupational base (R. at 15, 42-44). *See Walls*, 296 F.3d at 291-92. The VE testified as to the availability of sedentary jobs with a sit/stand option on the basis of her experience, knowledge, and information in the *Dictionary of Occupational Titles*. R. at 42-44. The ALJ, therefore, properly relied on the VE's testimony in

finding that Plaintiff could perform work existing in significant numbers in the national economy.

Plaintiff further maintains that the ALJ failed to include any limitation related to his neck impairment in the RFC assessment without explanation.  Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 12-1.

> While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]

*Reid v. Comm'r of Soc. Sec.*, No. 13-1480, 2014 WL 2958800, at *3 (4th Cir. July 2, 2014) (citation omitted) (internal quotation marks omitted).  Moreover, the burden is on the party attacking an agency's determination to show that prejudice resulted from the error.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).  Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."  *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  Rather, "[i]f it is predictable with great

confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bishop v. Comm'r of Soc. Sec.*, No. 14-1042, 2014 WL 4347190, at *2 (4th Cir. Sept. 3, 2014) (per curiam).

In this case, Plaintiff fails to allege any limitation resulting from his neck condition that would affect his ability to work.  He did not claim in his application that his neck condition limited his ability to work (R. at 135), and he did not allege so at the hearing (R. at 24-41). Further, an ALJ is not obliged to investigate a claim not presented at the time of the benefits application and not offered at the hearing as a basis for disability.  *Meyer v. Colvin*, 754 F.3d 251, 256-57 (4th Cir. 2014) (citing *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010)). Plaintiff's assertion regarding the ALJ's failure to address his neck impairment thus is unavailing.

**B.      ALJ's Credibility Determination**

Plaintiff next asserts that the ALJ erroneously evaluated his subjective complaints, citing SSR 96-7p.  Pl.'s Mem. Supp. Mot. Summ. J. 7-12, ECF No. 12-1.  Plaintiff first argues that the ALJ's finding of severe impairments at step two of the sequential evaluation process contradicts the ALJ's credibility determination.  *Id.* at 9-10.

As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments.   "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x

226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the ALJ must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the ALJ must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four.").

Here, although the ALJ found that Plaintiff's impairments were severe at step two because they caused more than a minimal limitation in his ability to perform basic work activities as of the date last insured (R. at 12), the ALJ determined that Plaintiff had the RFC to perform a reduced range of sedentary work (R. at 12-13, 15). In doing so, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were only somewhat credible (R. at 13), as the ALJ found that Plaintiff's testimony regarding his activities of daily living belied significant impairments or restrictions (R. at 13-14).

When a claimant alleges disability due to pain, the ALJ must apply the Commissioner's regulations, which establish a two-step process for evaluating whether a person is disabled by

pain and other symptoms. *Huntington v. Apfel*, 101 F. Supp. 2d 384, 392 (D. Md. 2000) (citing *Craig*, 76 F.3d at 594; 20 C.F.R. §§ 404.1529, 416.929). At the first step, the ALJ must determine that objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual pain in the amount and degree alleged by the claimant. *Id.* (citing *Craig*, 76 F.3d at 594). "At the second step of the *Craig* inquiry, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine the extent to which those symptoms limit the claimant's capacity to work." *Id.* (citing *Craig*, 76 F.3d at 595; 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)). At this second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information submitted by the claimant, such as the claimant's account of what aggravates the pain, medications taken to alleviate the pain, and a summary of how the pain affects daily living. *Id.* (citing 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3)).

"The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims of pain can reasonably be accepted." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). "Subjective symptoms of pain, standing alone, cannot sustain a finding of disability, and a claimant must substantiate his allegations of pain." *Id.* (citing *Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (Luttig, J., concurring); 20 C.F.R. § 404.1529). "The ALJ must make a finding regarding a claimant's credibility and should refer specifically to the evidence supporting this finding." *Id.* at 392-93 (citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam)); *see Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 338-39 (D. Md. 2003).

In this case, the ALJ noted Plaintiff's activities included performing household chores, watching television, reading, visiting others, attending church weekly, and walking for exercise. R. at 13. A claimant's daily living activities can provide substantial evidence to discount the claimant's credibility. *See Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Johnson*, 434 F.3d at 658 ("The ALJ also found [the claimant's] complaints of pain to be inconsistent with her testimony of her routine activities. [The claimant] testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor. [The claimant] also testified that she can lift approximately ten pounds. The ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1136 (N.D. Iowa 2011) (finding that substantial evidence in record of claimant's reported activities supported adverse credibility determination of ALJ, who found that claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"); *Henry ex rel. Henry v. Astrue*, Civil Action No. TMD-08-686, 2010 WL 3199344, at *5 (D. Md. Aug. 12, 2010) ("The ALJ reviewed Claimant's activities of daily living and noted he did some household cleaning,

15

drove, grocery shopped, read, watched television, went outside on his own, and visited family and friends.  The ALJ's consideration of Claimant's daily activities was proper based on the regulations . . . ." (citation omitted)).  Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's credibility.

Plaintiff further maintains that the ALJ failed to consider the credibility factors under SSR 96-7p.  Pl.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 12-1.  In *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999), the plaintiff argued that "the ALJ failed to give a legitimate reason for disregarding the [plaintiff's] allegations, failed to take into consideration the factors listed in Social Security Ruling 96–7p, and did not set forth the weight he attributed to the evidence which influenced his credibility determination."  This Court in *Ketcher* noted, however, that SSR 96-7p requires an ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about that symptoms and how they affect the individual, and any other relevant evidence in the case record."  *Ketcher*, 68 F. Supp. 2d at 652.  This Court in *Ketcher* ultimately found that the ALJ in that case considered the entire record and addressed the objective evidence as well as the plaintiff's subjective complaints.  *Id.*

Here, before concluding that Plaintiff's subjective complaints were only somewhat credible, the ALJ considered Plaintiff's activities of daily living (R. at 12, 13), the state agency medical consultant's opinion (R. at 14), and the evidence of record (R. at 12-14), which the ALJ noted did not contain opinions from treating or examining physicians indicating a greater degree of limitation than contained in the ALJ's RFC assessment (R. at 14).  The Court thus finds that

the ALJ complied with SSR 96-7p.  *See Ketcher*, 68 F. Supp. 2d at 652.  Plaintiff's assertion to the contrary is without merit.

## C.      Plaintiff's Borderline-Age Category

Plaintiff finally contends that the ALJ did not consider his borderline age of almost 50, as he was fewer than six months from his 50th birthday, or "closely approaching advanced age," on his date last insured (Pl.'s Mem. Supp. Mot. Summ. J. 12-14, ECF No. 12-1).  *See* 20 C.F.R. § 404.1563(d).  The ALJ found that Plaintiff had a college-level education and was able to communicate in English.  R. at 14.  The VE further testified that Plaintiff's skills were not transferable.  R. at 27.  Although the ALJ found that Plaintiff was a 49-year-old "younger individual" on his date last insured, the ALJ also found that, if Plaintiff had the RFC to perform the full range of sedentary work, a finding of "not disabled" would be directed by the Medical-Vocational Guidelines (the "grids") under grid rule 201.16 (R. at 14-15).  *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.16.  Grid rule 201.16 applies to individuals who are high-school graduates closely approaching advanced age with no transferable skills but whose education provides for direct entry into skilled work.  The ALJ found, however, that additional limitations impeded Plaintiff's ability to perform all or substantially all of the requirements of this level of work, and so the ALJ elicited testimony from a VE.  R. at 15, 42-44.  Plaintiff contends that he should have been found conclusively disabled under grid rule 201.14, which applies to a 50-year-old high-school graduate with no transferable skills and whose education does not provide for direct entry into skilled work.  20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14.

The date of an individual's lapse of insured status is considered when determining eligibility for DIB.  *Ross v. Astrue*, 636 F. Supp. 2d 127, 134 (D.D.C. 2009); 20 C.F.R. § 404.131.  Moreover,

> [the Commissioner] will not apply the age categories mechanically in a borderline
> situation.  If [the claimant is] within a few days to a few months of reaching an
> older age category, and using the older age category would result in a
> determination or decision that [the claimant is] disabled, [the Commissioner] will
> consider whether to use the older age category after evaluating the overall impact
> of all the factors of [the claimant's] case.

20 C.F.R. § 404.1563(b); *see Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983).  The

borderline range falls somewhere around six months from the older age category.  *Pickard v.*

*Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1168 (W.D. Tenn. 2002) (citing, *inter alia*, *France*

*v. Apfel*, 87 F. Supp. 2d 484, 491-92 (D. Md. 2000)).

Here, in evaluating Plaintiff under the grids before continuing the sequential evaluation

process, the ALJ did not use his chronological age on his date last insured and mechanically

apply the grids' age categories.  *Cf. France*, 87 F. Supp. 2d at 491 (in borderline-age situation,

ALJ erroneously evaluated Plaintiff by using her chronological age that fell under younger age

category in grids).  Rather, the ALJ found that, if Plaintiff had the RFC to perform the full range

of sedentary work, he would not be disabled under a grid rule applicable to individuals closely

approaching advanced age.  Plaintiff has neither argued that the ALJ erred in determining his

education as a vocational factor for purposes of the grids nor maintained that the ALJ's

hypothetical questions to the VE mischaracterized his age.  Further, as noted by the ALJ,

Plaintiff's counsel did not examine the VE at the hearing, although he had the opportunity to do

so.  R. at 15, 44.  Plaintiff's contention that the ALJ did not consider his borderline age thus is

unavailing.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct

legal standards in this case.  Accordingly, Defendant's Motion for Summary Judgment is

**GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's

decision is **AFFIRMED**.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is

**GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.   The

Commissioner's decision is **AFFIRMED**.   A separate order shall issue.


Date: September 8, 2014                                      _____/s/_____
                                                            Thomas M. DiGirolamo
                                                            United States Magistrate Judge